UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. DANIEL WALKER,<br><br>    Plaintiff,<br><br>    v.<br><br>W. L. MUNIZ, et al.,<br><br>    Defendants. | Case No. 19-cv-01430-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1, 3 |

G. Daniel Walker, an inmate currently housed at the California Medical Facility in Vacaville, commenced this action by filing a complaint in San Francisco County Superior Court. Defendants then removed the action to federal court because the complaint's claims for violations of Walker's rights under the U.S. Constitution provided federal question jurisdiction. The complaint is now before the Court for review under 28 U.S.C. § 1915A.

## BACKGROUND

A.   <u>Allegations In The Complaint</u>

Walker is 87 years old and has been in prison since 1974, according to the inmate locator website for the California Department of Corrections and Rehabilitation (CDCR) (available at https://inmatelocator.cdcr.ca.gov). The allegations in his complaint reach back 45 years and apparently concern events and omissions occurring at several prisons.

Walker alleges the following in his complaint:

Walker has been singled out for the past 45 years to be under control of the Departmental Review Board due to his litigation efforts against CDCR and its employees.[1] Docket No. 1 at 5.

Walker has filed more than 30 administrative appeals and obtained court orders that unspecified prison officials say they will not obey. *Id.* at 6. In 1990, he prevailed in an action in Kern County Superior Court. *Id.* at 10, 34, 41, 42. During the trial in that action, boxes were found that contained two years' worth of undelivered incoming and outgoing mail, and numerous things were seized when his cell "and office" were searched in January 1990.[2] *Id.* at 10. After the court entered judgment that the CDC could not seize and destroy anything, the CDC (i.e., the former name of the CDCR) and DRB transferred Walker to a series of prisons outside California and told those prisons not to let Walker have his legal property. *Id.* at 11. When Walker obtained an injunction from an Illinois court, the CDC had him transferred back to California with instructions to an Illinois prison to destroy his materials. *Id.* at 11, 171-72. Walker also litigated about prison officials' conduct regarding eyeglasses, and obtained court orders requiring prison officials to let him have his eyeglasses in 1988 – 1990. *Id.* at 12, 174-78.

Walker claims he has inadequate access to the law library and legal materials, and that defendants have interfered with his litigation activities. His allegations about deficiencies in the legal program include allegations that: there has been a conspiracy to deny him access to the law library between August 2007 and July 2016; forms, books, cases, and statutes have not been provided to him; the library is occasionally closed; the library staff is not properly trained; paging services are not provided when the library is closed; the librarians do not issue lists that would allow Walker to learn whether he will be admitted to the library; photocopying services have not been provided; and paper, envelopes and supplies have not been provided. *Id.* at 7-9, 12-13, 15. Defendant Miranda began "censoring pleadings" in an unspecified way on an unspecified date and

---

[1] The Departmental Review Board (DRB) "provides the [CDCR] Secretary's final review of classification issues which are referred by an institution head for a resolution or decision at the headquarters level." Cal. Code Regs. tit. 15 § 3376.1.

[2] The receipts he attaches to his complaint as evidence of the seizure are "search warrant inventory" forms that indicate the items were seized pursuant to a search warrant in January 1990. *See* Docket No. 1-1 at 10-11, 85-164.

told Walker that photocopying of pleadings was a privilege rather than a right. *Id.* at 7. Defendants have not given Walker the weekly access to the law library required by California Code of Regulations tit. 15, § 3123(b).[3] Docket No. 1-1 at 8, 15. He missed a filing deadline in a California Supreme Court case after he was denied law library access. *Id.* at 8.[4] Walker has been deprived of "optical reading equipment" and large print law books and texts he wants as accommodations for his vision impairment. *Id.* at 12-13.

Walker claims that, although doctors have ordered eye surgery since 2006, the CDC has not provided it and instead has allowed Walker "to go blind as punishment for his litigation" activities. *Id.* at 11-12, 17. The CDC and its employees "have an unwritten policy and practice for keeping successful litigators vision impaired." *Id.* at 12. Walker's eyeglasses have been seized and destroyed repeatedly. *Id.* at 12.

Walker claims that appropriate accommodations for his disabilities have not been provided. Defendants refuse to let him be transferred to a prison adequate for his vision, hearing, and mobility impairments that result in him being confined to a wheelchair. *Id.* at 17. He has been denied use of the "Opt Elect" machine used to magnify documents for vision-impaired readers. *Id.* at 7.

Walker claims that defendant Colvin engaged in "malicious prosecution" by writing a disciplinary report charging Walker with disrespect after he (Walker) filed a request for law library access in 2016. *Id.* at 13-14. The guilty finding on the disciplinary charge was overturned on appeal

---

[3] Contrary to Walker's suggestion, the regulation does not mandate weekly access or any particular number of hours in the library for every prisoner. It provides, in relevant part:

> All inmates, regardless of their classification or housing status, shall be entitled to physical law library access that is sufficient to provide meaningful access to the courts. Inmates on PLU status may receive a minimum of 4 hours per calendar week of requested physical law library access, as resources are available, and shall be given higher priority to the law library resources. Inmates on GLU status may receive a minimum of 2 hours per calendar week of requested physical law library access, as resources are available.

Cal. Code Regs. tit. 15, § 3123(b).

[4] The docket for the California Supreme Court case that seems to match the allegation (i.e., a case filed by Walker that has a briefing schedule ordered on December 1, 2016), does not reflect any ill consequence for Walker as a result of an allegedly missed deadline, i.e., there is no order reflecting a dismissal of the case or rejection of the brief due to an untimely filing. *See Walker v. CDCR (Departmental Review Board),* Cal. S. Ct. Case No. S238642.

3

1 and "it was agreed" that Colvin violated a state whistleblower provision by causing 47 administrative appeals to be processed over a lack of copy paper instead of simply buying copy paper. *Id.* at 14.

Walker also claims that he has been subjected to retaliation over the years. Personal property items (including more than 20 typewriters, word processors, and computers) have been lost, destroyed, or damaged. On more than 15 occasions, legal books, papers, and property have been lost, destroyed, or damaged. Twenty pairs of eyeglasses have been lost, destroyed, or damaged. The 11-year denial of eye care, the confiscation of legal supplies, and destruction/damage to his eyeglasses, and the denial of access to the law library is retaliatory. *Id.* at 9-10, 19.

Walker claims that he has not been given advance notice of DRB meetings held to decide where and how he is confined. He states that, on unstated dates, he has not been given an opportunity to be heard and has not been provided written statements of DRB decisions. *Id.* at 16.

B.  Walker's Other Litigation Efforts

Walker has filed several cases over the years that touch upon some of the same subjects as are covered in his complaint in this action.

In 1999, Walker filed an action alleging, inter alia, that some defendants (including the CDC) confiscated and failed to ship his legal files and other legal materials when he was transferred from Illinois to California; intercepted his outgoing mail and prevented documents from being filed in court; and seized his computer equipment and several typewriters, which prevented him from submitting pleadings. *See Walker v. Clark*, 53 F. App'x 804 (9th Cir. 2002) (unpublished) (appeal from C. D. Cal. Case No. 99-4471 LGB). *See also Walker v. Kelly*, 271 F. App'x 563 (2008) (upholding summary judgment for defendants); *see also id.* at 565 (finding that summary judgment was proper as to one defendant because a "prior Illinois state court action involved the same parties and resulted in a final judgment on the merits and Walker cannot relitigate issues stemming from the deprivation of his property that he raised or could have raised in the prior action").

Walker filed another action in 1999 alleging that prison officials had seized his eyeglasses and denied him access to the courts. *See Walker v. Pete*, 76 F. App'x 186 (9th Cir. 2003) (affirming

4

summary judgment for defendants in appeal from E. D. Cal. Case No. 99-6417 OWW).

In 2003, Walker filed a complaint against the CDC and several prison officials alleging that "prison officials have engaged in a scheme to deprive him of his necessary prescription eyeglasses." *See Walker v. Levin*, Cal. Ct. App. Case No. D044653, 2005 WL 1125645 (Cal. Ct. App. 2005).

In 2017, in an action removed to the Eastern District of California from the Sacramento County Superior Court, Walker alleged that defendants – many of whom are the same as the defendants in this action -- failed to create policies to protect ADA inmates, failed to transfer him to a suitable prison for vision-impaired inmates, interfered with his access to the law library, failed to provide him with laundry exchange for more than eight months, denied an accommodation request regarding a transport vehicle with a wheelchair lift, and retaliated against him. *Walker v. Kernan*, E. D. Cal. No. 17-cv-1764 KJM DB, 2018 WL 3691431 (E. D. Cal. 2018), and 2019 WL 636849 (E. D. Cal. 2019). He filed a second amended complaint in that action in late May 2019, alleging claims regarding the failure to accommodate his vision, hearing, and mobility disabilities; failure to provide eye surgery and hearing aids; failure to provide procedurally proper hearings; retaliation; conspiracy; and property loss/destruction. *See* Docket No. 22 in E. D. Cal. No. 17-cv-1764 KJM DB. He also alleges that he was transferred from Salinas Valley to the California Medical Facility in Vacaville on October 19, 2018, and seeks declaratory and injunctive relief, as well as damages. *Id.* at 5, 7.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

There are numerous problems with Walker's complaint. This order first discusses the overarching problems that the complaint appears to cover far too great a time period, asserts claims

5

being litigated elsewhere, and tries to attack too many unrelated problems. This order then discusses problems with the individual claims in the complaint. Walker will be required to file an amended complaint to address the various deficiencies addressed in this order.

A.  The Statute of Limitations Problem

A statute of limitations problem appears to exist for many of the claims in the complaint. Although the dates on which many of the events and omissions alleged in the complaint occurred are not mentioned, some of the allegations pertain to events and omissions which occurred more than forty years ago. A plaintiff cannot wait forever to bring his claims, and some of Walker's claims plainly are too old to go forward.

Section 1983 does not contain its own limitations period, so the court looks to the limitations period of the forum state's statute of limitations for personal injury torts. *See Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). California's statute of limitations period for personal injury torts is now two years, and the statute of limitations period for § 1983 claims is two years. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1; *Elliott*, 25 F.3d at 802. It is federal law, however, that determines when a cause of action accrues and the statute of limitations begins to run in a § 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Elliott*, 25 F.3d at 801-02. Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See Elliott*, 25 F.3d at 802.

Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years, but only for a plaintiff who is in prison "for a term less than for life" and is under the disability at the time the cause of action accrues. *See* Cal. Civ. Proc. Code § 352.1. The two years of tolling for the disability of incarceration applies only to claims for damages and does not apply to claims for injunctive or declaratory relief. *See id.* at § 352.1(c).

The limitations period may be subject to equitable tolling. Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison*

6

*v. California*, 21 Cal. 3d 313, 317 (1978)). Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court. The limitations period also may be tolled for the period in which a prisoner administratively exhausted his underlying grievances, pursuant to the requirements of the PLRA. *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").

Although the statute of limitations is an affirmative defense that normally may not be raised by the court sua sponte, it may be grounds for sua sponte dismissal of an *in forma pauperis* complaint where the defense is complete and obvious from the face of the pleadings or the court's own records. *See Franklin v. Murphy*, 745 F.2d 1221, 1228-30 (9th Cir. 1984). That is the situation here: the defense appears complete and obvious from the face of the complaint as to events and omissions that occurred more than four years before the complaint was filed on June 6, 2017. (For present purposes the court assumes the complaint was given to prison officials to mail on June 6, 2017, the date it was signed, although defendants would be free to argue for a different filing date.)

At the time he files his amended complaint, Walker must file a separate statement (labelled "Separate Statement Regarding Statute of Limitations" or something similar) explaining why the court should not dismiss as time-barred (a) the damages claims based on events and omissions that occurred more than four years before June 6, 2017, and (b) the injunctive relief/declaratory relief claims based on events and omissions that occurred more than two years before June 6, 2017. Of course, Walker is not limited to arguing only equitable tolling – he may submit any argument he has to show that the statute of limitations does not bar those claims.

In his amended complaint, Walker must provide dates for all the events and omissions alleged. This will aid the court in determining whether claims are time-barred. More importantly, however, dates are necessary to provide defendants fair notice of Walker's claims. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That short and plain statement must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Walker has been in prison for a very long time and apparently has a very

7

thick prison file. *See, e.g.,* Docket No. 1-1 at 11-12 (indicating numerous medical appointments over 11 years for vision problems); *id.* at 6 (stating that he has filed more than 30 appeals that have proceeded through all three levels of review). The relevant dates are needed to provide defendants fair notice of the particular events and omissions on which Walker's claims are based.

One theme in the complaint is that Walker has been retaliated against based on his litigation activities. The statute of limitations applies to the retaliatory acts, rather than the dates on which the First Amendment activities occurred, so it is not necessary that the First Amendment activities occurred within the limitations period. It may be that Walker's allegations about events occurring many decades ago are included simply to show the First Amendment activities that prompted defendants' allegedly retaliatory actions. Walker needs to be clearer in his amended complaint as to whether he is asserting claims about the litigation activities (or the facts underlying those litigation activities) or instead is trying to show his First Amendment activities that prompted the alleged retaliation. If it is the latter, i.e., the earlier litigation efforts are alleged to show what First Amendment activities prompted defendants' alleged retaliation, there is no need to allege those First Amendment activities in such great detail (as he has done with the many pages of the complaint that are devoted to describing litigation activities in the 1980s and 1990s) and they instead should be summarized in a few sentences identifying the cases by name, case number and filing date.

B.  The Duplicative Litigation Problems

The court is concerned about the similarities between the allegations in this case and the allegations in Walker's case now pending in the Eastern District of California (*Walker v. Kernan*, E. D. Cal. Case No. 17-cv-1764 KJM DB). A claim can be dismissed as is frivolous when it duplicates a claim alleged in another action. *See Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995)*; Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (duplicative or repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915 as malicious). Walker is not free to pursue the same claims in two different actions. He should not include in his amended complaint any claim that he is pursuing in the Eastern District of California. The need to avoid duplicative litigation provides yet another reason why it is imperative that Walker

1 provide the relevant dates in his amended complaint in this action.

C.      The Joinder Problem

Under Federal Rule of Civil Procedure 20(a) all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action."

"A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims made no effort to show that the 24 defendants had participated in the same transaction or series of transactions or that a question of fact was common to all defendants). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." *Id.* (citing 28 U.S.C. § 1915(g)). "Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach. As stated by one district court judge: 'there can be no hard and fast rule, and ... the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the several claims] against them.'" 7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (3d ed. 2001) (citation omitted).

Walker complains of many different problems with many different defendants. In his amended complaint, he must allege only claims against defendants that are "with respect to or arising out of the same ... series of transactions or occurrences," Fed. R. Civ. P. 20(a), as the other claims in the amended complaint. He may file separate actions to pursue other claims.

9

D.   The Individual Claims

1.   General Pleading Rules

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544 (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Many of Walker's allegations do not reach the level of facial plausibility, especially insofar as he attempts to suggest a four-decade conspiracy against him and concerted actions by the CDCR and individual officials at different prisons.

Walker must state each claim separately in his amended complaint. For each claim, he must allege the facts showing his entitlement to relief from the defendants. As mentioned earlier, he must provide dates for the events and omissions alleged in the amended complaint.

The amended complaint also must identify each defendant who Walker proposes to hold liable on each claim and allege facts showing the basis for liability for each defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (damages liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

2.   The Claims

Access to the courts: Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). The Ninth Circuit has "traditionally differentiated between two types of access to court claims: those involving prisoners' right[s] to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658

F.3d 1090, 1102 (9th Cir.2011) (emphasis in source), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

To allege a claim for denial of access to the courts of the first sort (i.e., denial of affirmative *assistance*), a plaintiff must allege facts showing that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis v. Casey*, 518 U.S. at 350-51. To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 355. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement of which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. *See id*. at 351.

To allege a claim for a violation of the right to litigate without active *interference*, the plaintiff must identify the interference and allege that he has suffered an actual injury, such as the dismissal of his pending action. *See Silva*, 658 F.3d at 1103–04. Additionally, the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying cause of action must be described by allegations in the complaint sufficient to give fair notice to a defendant, *id.* at 416, and to the court in a prisoner action that must be screened under 28 U.S.C. § 1915A.

For each claim of denial of access to the courts or denial of the right to litigate without interference, he must allege enough facts to state a claim that is plausible on its face. If he contends that there have been several violations of his right to access the courts, Walker must allege each one separately and link particular defendants to each claim.

Personal property: Allegations that a plaintiff has been deprived of his property negligently or intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels*

11

*v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property), because California provides an adequate state post-deprivation remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). The allegations that prison officials lost and destroyed Walker's eyeglasses, computers, typewriters, and writing supplies show random and unauthorized property deprivations that are not actionable under § 1983.

Retaliation: Within the prison or jail context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The complaint fails to state a cognizable retaliation claim because Walker has not made plausible allegations that adverse actions were taken by particular defendants because of his exercise of his First Amendment rights, and that those actions did not reasonable advance legitimate correctional goals. It is not enough to merely allege that some adverse conduct followed some First Amendment activity, especially where some of that First Amendment activity happened many decades ago. In his amended complaint, Walker must allege facts supporting each of the elements of a retaliation claim, allege the relevant dates, and link defendant(s).

Conspiracy: Conclusory allegations of a conspiracy unsupported by material facts are insufficient to state a claim. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "'A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted). A civil plaintiff "must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (internal citation and quotation marks omitted). A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983,

but may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). The complaint's numerous conspiracy allegations are mere conclusions unsupported by any facts. If he wants to assert conspiracy-based liability in his amended complaint, Walker must make nonclusory assertions of facts showing the existence of one or more conspiracies and link defendants

Medical care: To establish an Eighth Amendment claim on a condition of confinement, such as medical care, a prisoner-plaintiff must show: (1) an objectively, sufficiently serious, deprivation, and (2) the official was, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The complaint does not allege sufficient facts to state a plausible claim for deliberate indifference to Walker's medical needs by any defendant. If he wishes to pursue a claim about his medical care, he must allege facts showing both a serious medical need and deliberate indifference thereto by one or more defendants. As with all his claims, he must include dates on which the relevant events and omissions occurred, and must link one or more defendant(s) to his claim.

ADA and RA: Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of

action. *See Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. Cty of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

The proper defendant for a claim under Title II of the ADA and § 504 of the RA is the public entity responsible for the alleged discrimination. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (collecting cases); *but cf. Eason v. Clark Cty Sch. Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002) (declining to decide the issue). Title II of the ADA does not provide for suit against a public official acting in his individual capacity. *Everson*, 556 F.3d at 501. A plaintiff also cannot assert a claim under § 1983 against defendants in their individual capacities to vindicate rights created by the ADA and the RA. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

In his amended complaint, Walker must allege facts plausibly showing a violation of his rights under the ADA and RA. As with his other claims, he must allege the specific dates on which the relevant events and omissions occurred. If he made a reasonable accommodation request, he should describe what he requested, when he made his request, and what the prison officials' response was to that request.

Claims Against the DRB: Walker claims that the DRB has issued adverse decisions for many years without due process. One problem with the claims against the DRB is that the DRB does not appear to be an entity capable of being sued: the regulation indicates it is a committee whose membership changes over time and may change depending on the issue under consideration. *See* Cal. Code Regs. tit. 15, § 3376.1. Unless Walker has legal authority to support his assumption that the DRB is a legal entity capable of being sued, he should sue the individual members of a DRB that issued a decision adverse to him.

The other problem with the claims against the DRB is that Walker does not explain what the adverse decisions consisted of, so it cannot be determined whether a claim is stated for a due process violation. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in

conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

A decision to transfer a prisoner from one prison to another would not violate due process because prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum*, 427 U.S. at 224. A transfer to a new prison generally cannot be characterized as a deprivation of an interest of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or "inevitably affect the duration of [a] sentence," *id.* at 487. For the same reasons, changes in conditions relating to classification and reclassification generally do not implicate a prisoner's right to due process. *See Sandin*, 515 U.S. at 484, 487; *see also Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification).

A due process claim might be made for some administrative segregation placement decisions, although none are alleged in the complaint. When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Due process also requires that there be some evidence to support

the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05.

A due process claim also might be made for some disciplinary decisions, although none are alleged in the complaint. An inmate in California is entitled to due process before being disciplined when the discipline results in the deprivation of a liberty interest of real substance. *See Sandin*, 515 U.S. at 484, 487. The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). Due process also requires that there be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. at 454.

Eleventh Amendment immunity: The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985). Eleventh Amendment immunity also extends to suits against an arm of the state, such as the CDCR and prisons within the CDCR. *See Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity). All § 1983 claims against the DRB, CDCR, and the State of California are dismissed without leave to amend because these defendants have Eleventh Amendment immunity.

Eleventh Amendment immunity also extends to state officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). Claims for injunctive relief against the individual defendants sued in their official capacity may be pursued, however, because in *Ex parte Young*, 209 U.S. 123 (1908), the U.S. Supreme Court held that a suit against a state official seeking prospective injunctive relief from unconstitutional state action is not considered an action against the state. All § 1983 claims for damages against the individual defendants sued in their official capacities are dismissed because Eleventh Amendment immunity shields defendants from damages claims to the extent they are sued in their official capacities. Section 1983 claims for

1 prospective injunctive relief may be brought against individual defendants sued in their official
2 capacities. And, of course, § 1983 claims for damages against the individual defendants sued in
3 their individual capacity also may be brought.

<u>State law claims</u>: If Walker wants to plead one or more state law claims against defendants, he must identify and allege the particular state law claim(s), and should allege that he is suing for relief under 28 U.S.C. § 1367 (the supplemental jurisdiction provision) as well as under 42 U.S.C. § 1983 (the civil rights statute that gives the Court federal question jurisdiction over the case). As with all his claims, he needs to specify the defendant(s) for each state law claim.

**CONCLUSION**

Defendants' request for the Court to screen the complaint is GRANTED. Docket No. 3. This order does the screening under 28 U.S.C. § 1915A of the prisoner-plaintiff's complaint.

The complaint is dismissed for failure to state a claim upon which relief may be granted. Leave to amend is granted so that Walker may attempt to allege one or more claims in an amended complaint. The amended complaint must be filed no later than **July 15, 2019**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Walker is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of the action.

**IT IS SO ORDERED**.

Dated: June 4, 2019

SUSAN ILLSTON
United States District Judge

17